**S. H. FLETCHER and Joe Jennette,
Appellants,**

**v.**

**Milton WILSON et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 12, 1973.

---

Harry B. Miller, Jr., Miller, Griffin & Marks, Lexington, for appellants.

Foster Ockerman, Martin, Ockerman & Brabant, Lexington, C. Gibson Downing, Stoll, Keenon & Park, Lexington, for appellees.

CULLEN, Commissioner.

The legal sufficiency of the notification and declaration papers by which Milton Wilson sought candidacy for the Democratic nomination for the office of county judge, and James R. Davis sought candidacy for the Democratic nomination for the office of magistrate of the Marble Creek District, at the 1973 primary election in Jessamine County, was challenged in a *pre-primary* suit brought by two *voters* who were qualified to vote in the Democratic primary for the offices in question.[1] The circuit court dismissed the action on the ground that the plaintiffs had no standing to maintain it. On appeal to this court, however, that holding was reversed and the action was ordered to be reinstated. Fletcher v. Wilson, Ky., 495 S.W.2d 787. The mandate of this court on that appeal was issued before the primary took place, but insufficient time remained to try out the issues, so the ultimate judgment was not entered until after the primary. Wilson and Davis were on the ballot at the primary, and each won nomination.

The ultimate judgment of the circuit court was that the notification and declaration papers of both Wilson and Davis were legally sufficient. Wherefore the action again was dismissed. The plaintiffs have appealed.

The statute, KRS 119.055, provides that the notification and declaration of a person seeking nomination for office at a primary "shall be in the form prescribed by the state board of elections" and "shall be subscribed and sworn to by the person making it"; that the person "shall file therewith an affidavit of two (2) reputable electors who are members of the party to which the candidate belongs", which also shall be in

1. The papers of other candidates also were challenged, but they no longer are in issue.

the form prescribed by the state board of elections; and that the "notification and declaration and the accompanying affidavits may be on the same or separate sheets, but shall be filed together."

Wilson and Davis both used the form prescribed by the state board of elections, which consisted of a single sheet, with the notification and declaration provisions, followed by a jurat, at the top, and the affidavit provisions, followed by another jurat, at the bottom. The notification and declaration provisions included a space for designating the office being sought. The affidavit provisions included spaces for the affiants' names in the body of the affidavit, a space for designation of the precinct in which the affiants reside, and a space for designating the office being sought, preceded by a statement that the affiants believe the candidate to be qualified to fill that office.

The primary attack on Wilson's and Davis' papers is addressed to various failures of compliance with the forms in respect to the voters' affidavits. The failures are not the same as to both candidates, so we shall consider them separately, taking Wilson's papers first. KRS 119.190 indicates the legislative intent that *substantial compliance* will be acceptable, so our consideration will be addressed to that.

In Wilson's papers the space for designating the precinct of residence of the affiants, and the space for designating the office which the affiants believed the candidate qualified to fill, were not filled in. Also, whereas the spaces in the body of the affidavit for designating the names of the affiants were filled in with the names C. M. Dean and *Cecil Johnson,* the affidavit was signed at the bottom by C. M. Dean and *Billy K. Glover,* and the latter two names were entered in the jurat as the persons who subscribed and swore to the affidavit.

■ Under the particular circumstances of this case, we are not persuaded that the information with respect to the affiant's precinct of residence and the office being sought by the candidate was so essential that the filling of the blanks calling for that information was necessary to constitute substantial compliance.

Jessamine is a relatively small county, with a total population of only 17,430. The office in question was a county-wide one, so a designation of precinct of residence was not necessary to show qualification to vote. The only purpose the designation might have served would be to help in locating the affiants' places of residence, or to find their names on the registration records, but in such a small county that help was not an urgent matter.

■ As concerns the failure to fill in the blank designating the office sought, we have noted hereinbefore that the affidavit and the candidate's notification and declaration were on a single sheet of paper. The notification and declaration, at the top of the sheet, was filled in to show that Wilson was seeking the office of county judge. The evidence was that the execution of the notification and declaration preceded that of the affidavit. Thus, when the affidavit was executed, the affiants had before them the completed notification and declaration identifying the office sought by Wilson. Under these circumstances, the failure to designate the office in the affidavit cannot be considered a substantial deficiency.

■ As concerns the fact that the body of the affidavit designated Dean and Johnson as the affiants, whereas the affidavit was signed and sworn to by Dean and Glover, again we are not convinced that this defect must be considered fatal. The important question is whether the affidavit form reasonably may be construed as showing that Glover swore to *his* qualifications and *his* knowledge of and belief in Wilson's qualifications for the office of county judge, rather than swearing to *Johnson's* qualifications, knowledge and be-

lief. We believe it reasonably may be so construed, which would make Glover subject to prosecution for false swearing if the terms of the affidavit were false as to his qualifications, knowledge and belief. When the affidavit is so construed the discrepancy as to names does not constitute a material defect.

It is our conclusion, therefore, that Wilson's notification and declaration paper (including the affidavit) substantially complied with the statutory requirements as to form. The paper is attacked, however, on a further ground, which we shall now discuss.

The jurat at the end of that part of the paper containing the candidate's notification and declaration recited that it was "Subscribed and sworn to" by Wilson, and the jurat at the end of the voters' affidavit recited that it was "Subscribed and sworn to" by Dean and Glover. The plaintiffs undertook to prove, however, that Wilson and the affiants were sworn only as to the verity of their *signatures* and not as to the *truth of the facts* which the form stated they swore to. It is our opinion that this attack was not properly grounded.

KRS 61.060 provides that no fact officially stated by an officer in respect of a matter about which he is by law required to make a statement in writing, in the form of a certificate or otherwise, shall be called in question "except in a direct proceeding against the officer or his sureties, or upon the allegation of fraud in the party benefited thereby or mistake on the part of the officer." The parties agree that this statute is applicable to a notary's certificate in a jurat on a document required by law to be executed under oath.

█ One of the jurats on Wilson's paper was signed by a deputy county court clerk, and the other by the county court clerk himself. So the "officer" referred to in KRS 61.060 may in this case be considered to be the clerk. The statute authorizes an attack on the officer's certificate "in

a direct proceeding against the officer," and in the instant case the clerk was made a defendant. We think, however, that this language of the statute contemplates a proceeding in which some *recovery* is sought against the officer by reason of his dereliction, such as a suit on his bond. Cf. Commonwealth v. Rothwell, 5 Ky.Op. 251. In the instant case no personal recovery was sought against the officer; he was made a party solely that he might be enjoined in his official capacity from placing Wilson's name on the ballot.

█ Absent a direct proceeding for recovery against the officer, the statute requires an allegation of fraud or mistake. There is no pleading we can find in the record making such an allegation, but the trial judge's written opinion refers to a second amended complaint tendered by the plaintiffs "to conform to the proof on the proposition of taking 'sworn' statements and 'acknowledgments,' " and there is an order in the record that "a Second Amended Complaint to conform with the proof" be filed. Therefore, we shall assume that an appropriate pleading was made. However, the proof shows nothing in the nature of *fraud,* and it is our opinion that any *mistake* disclosed by the proof is not the kind of "mistake" contemplated by the statute, as construed in Cox v. Gill, 83 Ky. 669, 7 K.L.R. 720.

Our ultimate conclusion with respect to Wilson's papers is that the trial court correctly adjudged them to be sufficient, wherefore Wilson properly was on the ballot.

We now shall consider Davis' papers.

█ There is no way in which Davis' papers can be considered sufficient on their face because the portion of the papers setting forth the form for the voters' affidavit was not filled in *at all,* except that two names were signed on the lines designated for the signatures of affiants. The spaces in the body of the affidavit

were left completely blank, and the jurat was not executed.

Davis, in claiming substantial compliance, really is arguing excuses for *noncompliance.*

■ His first argument is that he was entitled to rely on an alleged assurance by the deputy county court clerk, when he presented to her the papers, that she would see that the affidavit form was filled out and would arrange for the oath to be administered to the affiants and the jurat to be executed. Davis relies on cases from foreign jurisdictions excusing *late filing* of papers where the officer with whom the papers were to be filed gave misinformation as to the correct filing date. We do not consider those cases to be in point or persuasive. They involved a misrepresentation of the law. In the instant case we have only a *promise of future action.* In making that promise the deputy clerk can be considered no more than the candidate's agent, and for her failure to perform the promise he must suffer the consequences. Cf. Belk-Simpson Co. v. Hill, Ky., 288 S.W. 2d 369.

■ Davis next contends that the county court clerk's personal knowledge, of the facts that the affiants would have sworn to had the affidavit been filled out, can be substituted for the affidavit. He cites as authority for that proposition Hallon v. Center, Ky., 102 Ky. 119, 43 S.W. 174. That case dealt with the clerk's knowledge of *official* or *public* facts and not private facts or beliefs. Furthermore, the opinion in that case states that the holding would have been different had the sufficiency of the papers been challenged by others (as is the case here). It is inconceivable to us that the complete absence of the required affidavit by two voters as to what they know and believe concerning the candidate's qualifications can be supplied by the county court clerk's "personal knowledge" of what two voters know and believe. If that were the law, a county court clerk running for reelection would not have to

file any papers at all, because he would have personal knowledge of all of the facts required to be stated in the papers.

■ A further contention is that the county court clerk is the sole judge of the sufficiency of nominating papers. As authority for that astonishing proposition Davis cites Blackburn v. Welch, 138 Ky. 267, 127 S.W. 991. As we read the opinion in that case, it holds no more than that the clerk may accept a petition that is deficient with respect to *directory* provisions, but not one that is defective with respect to *mandatory* provisions. We do not believe it can be reasonably argued that the requirement in the statute here involved, of an affidavit of voters, is merely directory to the extent that the complete absence of any affidavit is not fatal.

■ Next, Davis argues that the failure of the papers, when filed, to contain the required affidavit, was cured by an entry which the county court clerk made on the back of the nominating papers, after the time for filing had expired, in which he certified that on a specified previous date (which was before the time for filing expired) the "Notification and Declaration of James Ray Davis for Magistrate" was "acknowledged before me by Elmo Combs and W. I. Stinnett" (the two persons whose names were signed on the front of the papers). This belated certificate clearly could not cure the defect in the papers of the complete absence of the *body* of the affidavit (in that none of the blanks was filled in); it did not supply the *facts* required to be stated by affidavit.

■ Finally, Davis suggests that "supplemental" nomination papers filed by him, in correct form, six days after the deadline for filing, may be accepted as curing the defects in his original papers. He concedes that Evans v. Hill, 314 Ky. 61, 234 S.W.2d 297, takes a contrary view. Standing with it is Board of Education of Warren County v. Fiscal Court, Ky., 485 S.W. 2d 752. Davis claims support for his argu-

ment in Queenan v. Mimms, Ky., 283 S. W.2d 380. That case is not authority for the proposition that nominating papers patently insufficient on their face can be made sufficient by supplementation after the deadline for filing. It held merely that a petition nominating more candidates than there were positions to be filled could be corrected after the deadline by the action of some of the candidates in withdrawing their names. It was not a case of supplying a deficiency, but of eliminating an excess.

Our conclusion with respect to Davis' papers is that they did not substantially comply with the requirements of the statute and their deficiency was not cured by subsequent acts. Accordingly, Davis was not entitled to have his name on the ballot, and, thus not being a qualified candidate, cannot be awarded the nomination.

The effect will be that there was no valid election as to the office of magistrate of the Marble Creek district and there is a vacancy in the nomination. Cf. Ferguson v. Rohde, Ky., 449 S.W.2d 758. Neither of the other candidates for the nomination having filed a contest suit within the statutory time, there is no way either of them could claim the nomination. See Fletcher v. Wilson, Ky., 495 S.W.2d 787.

As to Wilson the judgment is affirmed; as to Davis the judgment is reversed with directions for the entry of a judgment conforming with this opinion.

All concur.